**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Margaret J. Hinchey, | No. CV13-00260-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Thomas C. Horne, an individual and as Attorney General of the State of Arizona, Richard Bistrow, an individual and as Chief Deputy Attorney General, State of Arizona, et al., | |
| Defendants. | |

Before the Court are motions to dismiss filed by Defendant the State of Arizona (Doc. 16), Defendants Eric and Laura Bistrow (Doc. 17), and Defendants Thomas and Marty Horne (Doc. 18). The State joins the motions filed by the Bistrow and Horne Defendants (Doc. 16), and the Bistrow and Horne Defendants join each other's motions (Docs. 17 and 19). The motions are fully briefed. For the reasons set forth below, the Court will grant in part and deny in part the motions.[1]

I.    **Background.**

The following facts are taken from Plaintiff's complaint. Plaintiff Margaret Hinchey is a criminal investigator employed by the State Attorney General as a Supervising Special Agent. Compl., Doc. 1-1 at 13-84, ¶¶ 1, 21. Plaintiff has served on

---

[1] Defendants' request for oral argument is denied. The parties' briefing and other submissions have amply addressed the issues raised by the motions, and the Court finds that oral argument will not aid its decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

the Federal Bureau of Investigation ("FBI") Public Corruption Task Force and as a U.S. Marshal Special Deputy.  *Id.*, ¶¶ 24, 113.  In January 2011, Plaintiff was charged with investigating complex financial crimes, organized crime, and public corruption.  *Id.*, ¶ 25.  As part of this assignment, Plaintiff swore out criminal complaints and testified at probable cause hearings, grand jury proceedings, and criminal trials.  *Id.*, ¶¶ 26-27.

After taking office in 2011, Defendant Attorney General Thomas Horne ("Horne") initiated an investigation into the political association of his employees, with specific concerns relating to which employees had raised funds for or contributed to his Democrat opponent, Felicia Rotellini ("Rotellini").  *Id.*, ¶¶ 68-70.  Plaintiff was concerned about Horne's investigation because she had contacts with Rotellini and supported her.  *Id.*, ¶¶ 73-77.  Plaintiff's concern grew, and she changed her party registration on July 22, 2011.  *Id.*, ¶ 79.

On July 7, 2011, Horne asked Plaintiff to investigate an internal leak.  *Id.*, ¶¶ 82-87.  At a July 28, 2011, briefing with Horne, Defendant Chief Deputy Attorney General Bistrow ("Bistrow"), and others, Plaintiff stated that the evidence suggested that Kathleen Winn, an aid to Horne, was the source of the leak.  *Id.*, ¶¶ 1, 94.  Horne responded:  "I can't fire her.  She can really hurt me."  *Id.*, ¶ 95.

In July and August 2011, Plaintiff gathered evidence suggesting that Winn had engaged in illegal conduct, including in her management of an independent expenditure fund for Horne's campaign.  *Id.*, ¶¶ 96-97.  Plaintiff informed Bistrow of these allegations in September 2011.  *Id.*, ¶ 98.  Bistrow stated that the allegations had been explained and were not a problem.  *Id.*, ¶¶ 99-100.

On September 27, 2011, Plaintiff learned from Public Information Officer Amy Rezzonico ("Rezzonico") that Horne and Winn had jointly managed independent expenditures in 2010.  *Id.*, ¶ 102.  The next day, Plaintiff met with Maricopa County Elections Director Karen Osborne to discuss independent expenditures.  *Id.*, ¶ 105.  Plaintiff reported her concerns about the campaign fund to her FBI supervisor.  *Id.*, ¶ 117.

On September 29, 2011, Assistant Attorney General Mike Flynn ("Flynn") told

Plaintiff and her supervisor, Chief Special Agent Andy Rubalcava ("Rubalcava"), about alleged campaign finance fraud.  *Id.*, ¶ 119.  That same day, Plaintiff and Rubalcava reported the allegations to Criminal Division Chief James Keppel ("Keppel").  *Id.*, ¶ 120.  Plaintiff informed Keppel and Rubalcava that she had reported evidence about these alleged frauds to her FBI supervisor.  *Id.*, ¶ 121.  The next day, Plaintiff told her FBI supervisor about Flynn's allegations.  *Id.*, ¶ 124.

In a briefing with Horne on December 7, 2011, Plaintiff suggested that she interview Winn, and Horne agreed to think about the matter.  *Id.*, ¶ 130.  After the meeting, Bistrow told Plaintiff that she was not to interview Winn because "Winn will only lie to you and we know Horne won't fire her."  *Id.*, ¶ 131.  On December 12, 2011, Bistrow met with Keppel to discuss how to destroy Plaintiff's internal investigation.  *Id.*, ¶¶ 132-137.  The next day, Bistrow instructed Plaintiff not to prepare write-ups for any of her interviews.  *Id.*, ¶¶ 138-39.  Despite these instructions, Plaintiff proceeded to memorialize her interviews and provided the FBI with a copy of her investigation file.  *Id.*, ¶¶ 140-44.  On January 11, 2012, Bistrow told Plaintiff that her investigation was suspended.  *Id.*, ¶¶ 145-46.  Plaintiff immediately gave her investigative notebook to Rubalcava.  *Id.*, ¶ 147.  Rubalcava informed Plaintiff that the investigation was not suspended, but that it was no longer her assignment.  *Id.*, ¶ 148.

Horne attended a dinner with Mark Goldman ("Goldman"), a Horne campaign fundraiser, on January 23, 2012.  *Id.*, ¶¶ 149-50.  Goldman told Horne that he believed the FBI was investigating Horne.  *Id.*, ¶ 151.  Horne subsequently informed Bistrow that Plaintiff's investigation prompted the FBI investigation.  *Id.*, ¶¶ 4, 152.  From January 23 to February 3, 2012, rumors circulated that Horne was inquiring into Plaintiff's trustworthiness.  *Id.*, ¶ 158.  Horne and Bistrow told Keppel that Plaintiff could not be trusted on February 3, 2012.  *Id.*, ¶ 159.

On February 13, 2012, Assistant Attorney General Gerald Richard ("Richard") advised Plaintiff that Winn had been sharing information contained in Plaintiff's investigatory interview memoranda with other attorney general employees and Horne

specifically.  *Id.*, ¶ 163.  This news alarmed Plaintiff because proper investigation protocol obligates her to inform witnesses that their interviews will remain confidential, and Richard's statement suggested that Winn, Horne, or Bistrow had access to the interview notes.  *Id.*, ¶¶ 164-67.

On February 22, 2012, Assistant Attorney General Steve Duplissis ("Duplissis") told Keppel that Horne had called him at home a few days earlier to tell him that Plaintiff may have had some kind of personal intimate relationship with Rotellini and that Plaintiff could not be trusted.  *Id.*, ¶¶ 168-70.  Duplissis also told Keppel that Horne had described Plaintiff as hostile and a "political hack."  *Id.*, ¶¶ 171-72.  Duplissis reported that Horne had asked him if Plaintiff was a registered Democrat and if Duplissis knew anything about Plaintiff being involved with Rotellini's campaign.  *Id.*, ¶¶ 173-74.  Duplissis then stated that Horne had informed him that criminal defense attorney Larry Debus ("Debus") would likely question him.  *Id.*, ¶ 175.  Sometime later, Duplissis told Keppel that Debus had questioned him, and he described feeling uncomfortable with the questioning because it implied that Plaintiff was a "rogue investigator."  *Id.*, ¶ 176.

During the last week of February 2012, Assistant Attorney General Charles Johnson ("Johnson") contacted attorney general employee Charles Loftus ("Loftus") and informed him that Horne was learning that Plaintiff had more of a relationship with Rotellini than she had let on and asked Loftus to draft a memorandum stating that Plaintiff "is hard to work with."  *Id.*, ¶¶ 177-78.  On March 20, 2012, Keppel and Rubalcava asked Johnson why he had concerns about Plaintiff.  *Id.*, ¶ 179.  Rubalcava advised Johnson that looking into the credibility of a sworn law enforcement officer was a serious step to take against an officer because of *Brady* implications.  *Id.*, ¶¶ 180-82.

On March 22, 2012, Horne and Bistrow told Keppel that Plaintiff could not be trusted because she had reported baseless criminal allegations against Horne to the FBI.  *Id.*, ¶ 183.  Keppel asked them what they wanted to do about Plaintiff, and Horne and Bistrow said nothing because she is a "whistleblower."  *Id.*, ¶¶ 184-85.

In a cease and desist letter dated March 23, 2012, Plaintiff's counsel informed

Horne and Bistrow that Plaintiff was aware of their campaign against her. *Id.*, ¶¶ 186-88; Doc. 1-2 at 24-31. Plaintiff's counsel requested that Horne and Bistrow inform Plaintiff as to whether she was "under any type of 'investigation' and the nature of that investigation." Doc. 1-2 at 29. Horne responded in a letter dated March 27, 2012, stating that there was no investigation and no campaign against Plaintiff. Compl., ¶¶ 189; Doc. 1-2 at 33. The letter indicated that Horne was aware that one of Plaintiff's fellow investigators had been saying negative things about Plaintiff, that a meeting was held, and that the individual was instructed not to have any further conversations of that nature. Compl., ¶ 190; Doc. 1-2 at 33.

On March 27, 2012, Keppel met with Bistrow and told him that it would not be appropriate for Plaintiff to tell Horne about evidence that related to his conduct. Compl., ¶ 191. Keppel resigned from his position on March 28, 2012, and Horne thereafter appointed Andrew Pacheco ("Pacheco") as Criminal Division Chief. *Id.*, ¶¶ 193-94.

By the end of March 2012, various media outlets had issued reports concerning the FBI's investigation into Horne and Winn. *Id.*, ¶ 200. Plaintiff had not provided any information about the investigation to the media (*id.*, ¶¶ 198-99, 201-02), but Horne and Bistrow thought that Plaintiff was the media source (*id.*, ¶ 203).

Special Assistant Attorney General Lawrence Cutler ("Cutler") contacted members of the Tempe Police Department to "dig up dirt" on Plaintiff between January 23 and April 25, 2012. *Id.*, ¶ 208. On April 25, 2012, Cutler told a co-worker that Plaintiff was under investigation and that she was a liar. *Id.*, ¶ 209. That same day, Plaintiff learned that she was being labeled a "liar." *Id.*, ¶ 207.

On April 11, 2012, three former police officers, persons previously indicted in a case investigated by Plaintiff, filed a notice of claim ("NOC") alleging that Plaintiff had fabricated facts in her grand jury testimony.[2] *Id.*, ¶ 223; *see* Doc. 1-2 at 39-66. Horne,

---

[2] The complaint alleges that the NOC was filed by "four former PPD officers" (Compl., ¶ 223), but the NOC shows that it was actually filed by two Phoenix Police Officers and a Phoenix Police Sergeant (Doc. 1-2 at 39). The wife of one of the Police Officer's also claimed damages in the NOC. *Id.*

Bistrow, and Pacheco retained Dale Danneman ("Danneman") as outside counsel to conduct an internal investigation into the NOC against Plaintiff.  Compl., ¶¶ 218-22, 230, 236, 240, 249.  Horne distributed the NOC to the media on June 11, 2012.  *Id.*, ¶ 276.

Plaintiff became aware of the Danneman investigation because she obtained a copy of a May 3, 2012, screening memorandum prepared by Bistrow.  *Id.*, ¶¶ 241-44.  The Bristow memo repeated allegations made by the former police officers in the NOC, including that Plaintiff had fabricated facts before a grand jury.  *Id.*, ¶ 245; *see* Doc. 1-2 at 34-37.  The Bistrow memo shocked Plaintiff because to her it implied that Horne and Bistrow believed the allegations made in the NOC.  Compl., ¶¶ 260, 264.  In a letter dated May 17, 2012, Plaintiff's counsel objected to this "unprecedented process."  *Id.*, ¶ 252.  Bistrow responded in a letter dated May 25, 2012.  *Id.*, ¶ 253.

Between February and May 2012, Horne claimed to have spoken about Plaintiff to at least three attorney general employees and learned from these employees that they had heard Plaintiff say that she "cannot work with a Republican."  *Id.*, ¶¶ 266-67.

Plaintiff felt that the office was growing more tense and hostile and that her co-workers were forced to take sides against her.  *Id.*, ¶¶ 211-13.  By early May 2012, Plaintiff noticed a change in her assignments.  *Id.*, ¶ 210.  For instance, she was no longer selected to serve as acting chief in Rubalcava's absence (*id.*, ¶ 214), she was no longer tasked to highly sensitive public corruption cases (*id.*, ¶ 215), and she was not listed on an operations plan for Horne's security detail despite being expected to serve in that capacity (*id.*, ¶ 216).

Plaintiff took an employment leave absence for medical reasons starting May 4, 2012.  *Id.*, ¶ 272.  On June 7, 2012, Plaintiff filed a notice of claim against Horne, Bistrow, and the State.  *Id.*, ¶ 275; Doc. 1-3 at 18-37.  In early October 2012, the Maricopa County Attorney initiated a campaign finance action against Horne and Winn.  Compl., ¶¶ 3, 290.

Plaintiff returned to work in October 2012.  *Id.*, ¶¶ 292, 369.  Plaintiff's request to resume her duties with the FBI Public Corruption Squad was denied.  *Id.*, ¶ 293.  Co-

workers would walk past her office and loudly proclaim their loyalty to Horne. *Id.*, ¶ 307. On October 22, 2012, Bistrow glared at Plaintiff for several minutes. *Id.*, ¶ 311.

Pacheco informed Plaintiff that she was under investigation on October 2, 2012, but he did not explain the scope of the investigation. *Id.*, ¶¶ 296-98. On October 3, 2012, Plaintiff was informed that she would be left alone with some of the files that formed the basis of the NOC. *Id.*, ¶ 301. Plaintiff feared that she would be accused of falsifying or manipulating evidence and requested not to be left alone with the files, but that request was denied. *Id.*, ¶¶ 302-03. The files were not secure and many attorney general employees had access to the files. *Id.*, ¶¶ 304-05. Plaintiff found items missing from the files (*id.*, ¶¶ 305-06) and told outside counsel Danneman about the missing documents in a November 26, 2012, email (*id.*, ¶ 325).

Danneman requested that Plaintiff come to his office for an interview on December 3, 2012. *Id.*, ¶ 327. Plaintiff believes that Danneman is not independent because he also represents a person who contributed to Winn's political action committee. *Id.*, ¶¶ 315. For this reason, Plaintiff emailed Pacheco to request that a truly independent law enforcement agency – not Danneman – conduct the investigation. *Id.*, ¶ 332. Pacheco told Plaintiff that her request constituted an act of insubordination. *Id.*, ¶ 334.

Plaintiff has suffered from medical ailments because of stress related to her employment. *Id.*, ¶¶ 345-350, 353-68, 371, 375-76, 355-61.[3] Plaintiff has also suffered economic losses. *Id.* ¶¶ 362-63, 371-72.

Plaintiff's complaint asserts several causes of action: (1) conspiracy, (2) defamation – slander and libel, (3) defamation – false light, (4) unlawful disciplinary action against a sworn peace officer without just cause in violation of A.R.S. § 38-1101, (5) unlawful retaliation against an Arizona State employee in violation of A.R.S. § 38-

---

[3] The complaint does not correctly number paragraphs over 500. For instance, the complaint goes from paragraph 376 to paragraph 355 (Doc. 1-1 at 48-49), and from paragraph 498 to paragraph 26 (*id.* at 83-84). The Court's citations are to the numbers listed in the complaint.

532, (6) abuse of process, (7) intentional infliction of emotional distress, (8) invasion of privacy, (9) § 1983, (10) negligence, and (11) respondeat superior.  Compl., Doc. 1-1 at 65-84.

## II.    Legal Standard.

When analyzing a complaint for failure to state a claim to relief under Rule 12(b)(6), the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party.  *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).   Legal conclusions couched as factual allegations are not entitled to the assumption of truth, *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009), and therefore are insufficient to defeat a motion to dismiss for failure to state a claim, *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010).   To avoid a Rule 12(b)(6) dismissal, the complaint must plead enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Absent specific exceptions, the Court will not consider evidence or documents beyond the complaint in the context of a Rule 12(b)(6) motion to dismiss.  *See United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003).   "If, on a motion under Rule 12(b)(6) or 12(c),  matters outside the pleadings are presented to and not excluded by the court the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).  "A court may, however, consider certain materials – documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice – without converting the motion to dismiss into a motion for summary judgment."  *Ritchie*, 343 F.3d at 908 (citations omitted); *see also Knievel v. ESPN,* 393 F.3d 1068, 1076 (9th Cir. 2005) (noting that the court may take into account documents

"whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.").

Plaintiff attaches the following exhibits to her complaint:  (1) "Order Requiring Compliance" in the Horne campaign finance proceeding (Doc. 1-2 at 2-22); (2) a March 23, 2012, letter from Plaintiff's counsel to Horne (*id.*, at 23-31); (3) a March 27, 2012, letter from Horne to Plaintiff's counsel (*id.* at 32-33); (4) the Bistrow memo (*id.* at 34-37); (5) the NOC against Plaintiff (*id.* at 38-78); (6) a May 17, 2012 letter from Plaintiff's counsel to Bistrow (Doc. 1-3 at 2-14); (7) a May 25, 2012, letter from Bistrow to Plaintiff's counsel (*id.* at 15-17); (8) Plaintiff's June 7, 2012, notice of claim (*id.* at 18-37); (9) "Response to Order Requiring Compliance" in the campaign finance proceeding (*id.* at 38-57); and (10) Plaintiff's February 2011 to January 2012 employment evaluation summary (*id.* at 58-63).  Because these materials were attached to the complaint, the Court finds that it can consider them without converting the motions to summary judgment requests.

**III.    Analysis.**

The Horne and Bistrow Defendants move to dismiss Plaintiff's claims one through eight and ten for failure to state a claim to relief under Rule 12(b)(6).  Doc. 17 at 1; Doc. 18 at 1.  The State moves to dismiss claims one through eleven.  Doc. 16 at 1. Defendants argue that Plaintiff cannot base her claims on alleged facts occurring after she filed her notice of claim on June 7, 2012.  Doc. 17 at 3-4; Doc. 18 at 2-3.  The Court will address this argument before considering the merits of Plaintiff's claims.

**A.    Facts Alleged After June 7, 2012.**

Section 12-821.01(A) of the Arizona Revised Statutes requires a plaintiff to serve notice of the claim on a public employee before filing a lawsuit against the public employee.  "The purpose of this statute is to give an agency notice of a claim, an opportunity to assess the claim and the potential for liability, and a chance to settle the claim before an action is filed in court."  *Barth v. Cochise Cnty.*, 138 P.3d 1186, 1189 (Ariz. Ct. App. 2006).  Accordingly, the notice "must contain enough information to

allow the entity to investigate the merits of the claim and assess its potential for liability." *Id.*   The law does not "impose[] on a public entity the duty to investigate acts by its agents with respect to the claimant that occur *subsequent* to the notice of claim.   Nor does the law place the public entity on notice of any acts committed after the date of the notice it might discover if it investigates the facts stated in the notice claim."   *Haab v. Cnty. of Maricopa*, 191 P.3d 1025, 1029 (Ariz. Ct. App. 2008).   Defendants cite *Barth* and *Haab* for the proposition that facts alleged in the complaint that post-date the June 7, 2012, notice of claim cannot serve as basis for any of Plaintiff's claims.   Doc. 17 at 3-4; Doc. 18 at 2-3.   Plaintiff disagrees, and argues that "a fair reading of A.R.S. § 12-821.01 does not suggest or approve of this outcome."   Doc. 23 at 5.

"[T]he filing of a new notice of claim [i]s not required for each event 'when the same continuing [allegation] is the cause of the injuries, and when that continuing condition is the subject of a lawsuit pending with the court after initial compliance with the claims statute.'"   *Haab*, 191 P.3d at 1029 (quoting *Graber v. City of Peoria*, 753 P.2d 1209, 1212 (Ariz. Ct. App. 1988)).   With the exception of Plaintiff's conspiracy claim, Defendants do not argue that the notice of claim failed to provide them with adequate notice of Plaintiff's claims, and the Court construes *Haab* and *Barth* as authority for striking claims – and not alleged facts – for failure to comply with § 12-821.01(A).   *See Barth*, 138 P.3d at 1190-91 (finding that plaintiff failed to comply with § 12-821.01 because the notice "did not and could not include sufficient facts for the county to investigate and address the [constructive discharge] claim because, as the county points out, no discharge constructive or otherwise, had yet occurred."); *Haab*, 191 P.3d at 1028-30 (finding that plaintiff was required to amend his notice of claim to bring claims based on the county's wrongful release of military records when the notice of claim only described facts arising from an alleged wrongful arrest and incarceration).   Accordingly, the Court will consider all facts properly alleged in analyzing the motions to dismiss.

**B.   Count I:  Conspiracy.**

"[L]iability for civil conspiracy requires that two or more individuals agree and

thereupon accomplish an underlying tort which the alleged conspirators agreed to commit." *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 36 (2002) (internal quotation marks omitted). Defendants move to dismiss Plaintiff's conspiracy claim on the ground that the notice of claim did not set forth sufficient facts to put them on notice that they might face liability for the conduct of others.  Doc. 17 at 9; Doc. 18 at 7.  In response, Plaintiff contends that "under the Notice of Claim Statute, Plaintiff is not obliged to detail every legal theory." Doc. 23 at 10.

The notice of claim does not specifically identify a conspiracy claim (Doc. 1-3 at 19-37), but it does allege joint activity by Horne and Bistrow, asserting that they "undertook a smear campaign to discredit [Plaintiff] and are currently engaged in attempting to destroy her law enforcement career" (*id.* at 20).  The notice alleges that Horne acted with a "desire to protect himself and his associates from potential criminal liability" and that Bistrow was "motivated by a desire to protect [] Horne and his own position of power and authority."  *Id.*  These allegations clearly suggest that Horne and Bistrow acted in concert to injure Plaintiff.  The Court concludes that the notice "contain[s] facts sufficient to permit [Defendants] to understand the basis on which liability is claimed."  A.R.S. §12-821.01(A).  The Court will deny the motions to dismiss Plaintiff's conspiracy claim.

### C.    Count II:  Defamation – Slander and Libel.

The tort of defamation requires a false and defamatory statement concerning the plaintiff, an unprivileged publication of the statement to a third party, and fault on the part of the publisher.  *Boswell v. Phoenix Newspapers, Inc.*, 730 P.2d 178, 180 (Ariz. Ct. App. 1985); *see also Godbehere v. Phoenix Newspapers, Inc.*, 783 P.2d 781, 787 (Ariz. 1989).  "To be defamatory, a publication must be false[.]"  *Godbehere*, 783 P.2d at 787.  A pure opinion "not laden with any false factual content . . . nor . . . imply[ing] undisclosed defamatory facts" is not actionable.  *MacConnell v. Mitten*, 638 P.2d 689, 692 (Ariz. 1981); *see also Yetman v. English*, 811 P.2d 323, 330 (Ariz. 1991).

A complaint that falsely impugns the reputation of a law enforcement officer may be defamatory and actionable, so long as constitutional requirements are fulfilled.  *Turner v. Devlin*, 848 P.2d 286, 289 (Ariz. 1993) (citing *Selby v. Savard*, 655 P.2d 342, 344-45 (Ariz. 1982)).  A law enforcement officer is a public official, *see Lewis v. Oliver*, 873 P.2d 668, 675 (Ariz. Ct. App. 1993) (collecting cases), and *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964) provides that a public official suing for defamation must show that the defendant made the defamatory statement with "actual malice."  Additionally, "[a] statement regarding matters of public concern must be provable as false before a defamation action can lie."  *Turner*, 848 P.2d at 290 (citing *Milkovich v. Lorain Journal, Co.*, 497 U.S. 1, 16, 19-20 & n.6 (1990)).  "Because truth is an affirmative defense, the burden of proving falsity lies only on those plaintiffs who are defamed by speech that is a matter of public concern."  *Id.*  "Whether speech addresses a matter of public concern must be determined by the expression's content, form, and context as revealed by the record as a whole."  *Id.* (quoting *Dun & Bradstreet, Inc. v. Greenmore Builders, Inc.*, 472 U.S. 749, 761 (1985)) (brackets and ellipses omitted).

Plaintiff's defamation claim is based on the following statements allegedly made by both Horne and Bistrow:  Plaintiff is (1) "hard to work with," (2) "can't be trusted," (3) a "rogue investigator," and (4) "incompetent."  Compl., ¶¶ 388-89.  The claim additionally alleges that Horne made the following defamatory remarks:  Plaintiff (5) is or was an "intimate of Rotellini," (6) is a "political hack," and (7) a "liar."  Compl., ¶ 388.  The claim alleges that Bistrow made the following defamatory remarks:  Plaintiff (8) is a "fabricator of grand jury evidence" and (9) a "perjurer."  Compl., ¶ 389.  The complaint alleges that Horne and Bistrow published the statements through various means, including telephone calls, meetings, verbal conversations, memoranda, and other electronic communications (*id.*, ¶¶ 387-89), knew their statements were false (*id.*, ¶ 392), and acted "knowingly, intentionally, with malice, and with an evil mind guiding an evil hand" (*id.*, ¶ 294).

/ / /

1             **1.     Statements One, Two, Three, Four, and Six.**

2             Defendants argue that statements one, two, three, four, and six are expressions of

3      opinion that cannot form the basis of a defamation claim.  Doc. 17 at 5-7; Doc. 18 at 4-5.

4      Plaintiff disagrees and argues that statements like Plaintiff "'can't be trusted' attack[] her

5      honesty and integrity, and can and will be disproved."   Doc. 23 at 9.   Additionally,

6      Plaintiff argues that "statements that Plaintiff 'can't be trusted,' may be proved by the

7      trust placed in her by many, including Horne and Bistrow until they learned of her

8      'disloyalty' by engaging in proper handling of evidence of violation of a statute carrying

9      criminal penalties."  *Id.*  Plaintiff argues the same as to the statement that she is a "rogue

10     investigator" and "incompetent."  *Id.* at 10.

11            A statement of opinion relating to matters of public concern, which does not

12     contain a provably false factual connotation, receives full constitutional protection and

13     cannot support a claim for defamation.  *See Milkovich*, 497 U.S. at 19-20.   Statements

14     one, two, three, four, and six reveal nothing more than Horne and Bistrow's subjective

15     impression of Plaintiff's credibility and job performance.  The statements do not contain

16     factual connotations that are provable.  The statements are not provable as false by Horne

17     and Bistrow's once favorable opinion of Plaintiff because "[a] subjective assessment does

18     not suddenly become provable merely because the speaker later reevaluates the subject

19     and formulates a different opinion."  *Turner*, 848 P.2d at 291.  Nor are they provable as

20     false by the fact that Plaintiff has an esteemed reputation as a special agent, or by her

21     correct "handling of the evidence of Horne's violation of campaign laws[.]"  Doc. 23 at

22     10.  Plaintiff has not provided objective criteria that a jury could effectively employ to

23     determine the accuracy of these statements, and the Court finds none.  Whether Plaintiff

24     is "hard to work with" as opposed to a team player, "can't be trusted" or is trustworthy, a

25     "rogue investigator" or a "by the book" investigator, a "political hack" or a nonpolitical

26     public employee, and "incompetent" or knowledgeable "all lie beyond the realm of

27     factual ascertainment of proof."  *Turner*, 848 P.2d at 292.

28     / / /

1

2        **2.      Statement Five.**

3            As to the statement Horne allegedly made that Plaintiff is or was an "intimate of

Rotellini" (Compl., ¶¶ 169, 388), Defendants argue that the complaint does not allege

facts sufficient to establish that Horne made this statement with knowledge of its falsity

or with reckless disregard for its truth or falsity.  Doc. 18 at 6-7.  The complaint does

allege that "Defendants and their co-conspirators knew their statements were false when

they spoke or published them, or acted with reckless disregard of their truth."  Compl.,

¶ 392.  At the motion to dismiss stage, a plaintiff may generally aver a defendant's state

of mind simply by stating that it existed.  Fed. R. Civ. P. 9(b); *Flowers v. Carville*, 310

F.3d 1118, 1129-30 (9th Cir. 2002).  This is not a basis to dismiss Plaintiff's defamation

claim.

        **3.      Statement Seven and Nine.**

            Defendants argue that Horne and Bistrow's statements that Plaintiff is a "liar" and

a "perjurer" are too vague and conclusory to support a defamation claim.[4]  Doc. 18 at 5-6;

Doc. 17 at 7.  Defendants cite *Perryman v. Dorman*, No. CV–10–1800–PHX–FJM, 2011

WL 379313, at *3 (D. Ariz. Feb. 2, 2011), and *Athans v. Starbucks Coffee Co.*, No. CV–

06–1841–PHX–DGC, 2007 WL 899130, at *2 (D. Ariz. Mar. 23, 2007), for the

proposition that "[d]ismissal is appropriate where a plaintiff's complaint fails to set forth

a particular instance of publication and instead relies upon vague and conclusory

allegations that the defendant generally made false statements to unidentified third

parties."  Doc. 17 at 7-8; *see also* Doc. 18 at 5-6.  But *Perryman* dealt with "generalized

accusations about a 'personal attack' and 'false disparaging statements,'" *Perryman*,

2011 WL 379313 at 3, and *Athens* dealt with a complaint that did not identify which of

the defendant's employees made the statements, what was said, and did not allege why

the defendant should be liable for the actions of the employees in question, *Athens*, 2007

---

[4] Defendants also make this argument with respect to Horne and Bistrow's statements that Plaintiff is "hard to work with," a "rogue investigator," and "incompetent" (Doc. 18 at 5; Doc. 17 at 7), but the Court has already found that Plaintiff cannot base her defamation claim on these non-fact-based expressions of opinion.

1    WL 899130 at *2.

2         The Court does not conclude that calling a law enforcement officer a liar or a

3    perjurer is too vague to support a defamation claim.   Such accusations usually are

4    supported by specific instances of conduct, and likewise can be provably false.

5         As to the statement that Plaintiff is a "perjurer," Plaintiff alleges that Horne and

6    Bistrow "spoke and/or implied" this fact "in [their] personal and written communications,

7    directly, and indirectly."   Compl., ¶¶ 388-89.   Although the complaint does not allege

8    precisely how this defamatory statement was published, notice pleading does not require

9    specific facts.   *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).   Plaintiff's complaint

10   provides more detail about who made the statements and the theory of liability than the

11   complaint did in *Athens*, and gives fair notice that the defamation claim rests on Horne's

12   statement that Plaintiff is a "liar" and Bistrow's statement that Plaintiff is a "perjurer."

13   Compl., ¶¶ 388-89.

14        Because calling Plaintiff a "liar" and a "perjurer" can amount to criticism of a law

15   enforcement officer in her official capacity, such statements are a matter of public

16   concern and thus "must be provable as false before a defamation action can lie."   *Turner*,

17   848 P. 2d at 290.   *See also Godbehere*, 783 P.2d at 789 ("It is difficult to conceive an

18   area of greater public interest than law enforcement.   Certainly the public has a legitimate

19   interest in the manner in which law enforcement officers perform their duties.").

20   Whether Plaintiff can muster evidence to prove the falsity of these statements cannot be

21   determined at the motion to dismiss stage.   Defendants can raise this issue again in a

22   summary judgment motion.

23              **4.        Statement Eight.**

24        Defendants argue that the statement that Plaintiff is a "fabricator of grand jury

25   evidence" does not constitute defamation because it was made in the Bistrow memo and

26   simply restated allegations made in the NOC against Plaintiff.   Doc. 17 at 5.   Plaintiff

27   argues that the statement "unequivocally represent[s] that Plaintiff lied to a grand jury"

28   (Doc. 23 at 6) because the memo "selected and recited the most inflammatory accusations

in the [NOC] and gave those wild and unsubstantiated accusations the imprimatur of [Bistrow] and Horne's belief in them by commissioning the unheard of procedure now called the 'Danneman investigation'" (*id.* at 7).   The complaint alleges that Bistrow repeated allegations in the NOC (Compl., ¶¶ 245, 248), and a review of the Bistro memo shows this to be true.   The memo merely recounts allegations made in the NOC and attributes them to the NOC.  Doc. 1-2 at 34-35.  Because the memo's statement – that the NOC claimed Plaintiff fabricated evidence before a grand jury – was true (Doc. 1-2 at 38-78), it cannot provide the basis for a defamation claim.

### 5. Defamation Claim Conclusion.

Because Plaintiff has stated a defamation claim with respect to some statements alleged in the complaint, the Court will deny Defendants' motions to dismiss the claim. The claim will remain with respect to Horne's statement that Plaintiff (5) is or was an "intimate of Rotellini" and (7) is a "liar," and Bistrow's statement that Plaintiff (9) is a "perjurer."

### D. Count III:  Defamation – False Light.

A plaintiff may assert a false light claim if a defendant knowingly or recklessly publishes false information or innuendo about the plaintiff.  *See Hart v. Seven Resorts, Inc.*, 947 P.2d 846, 854 (Ariz. Ct. App. 1997) (citing *Godbehere*, 783 P.2d at 786).   The published information must be "highly offensive to a reasonable person."  *Id.*   The statements must also involve "'a major misrepresentation of [the plaintiff's] character, history, activities or beliefs,' not merely minor or unimportant inaccuracies."  *Godbehere*, 783 P.2d at 787 (quoting Restatement (Second) of Torts § 652E cmt. c (1977)).

Plaintiff's false light claim alleges that Horne and Bistrow "published false and defamatory information about Plaintiff to journalists and other members of the media" (Compl., ¶ 401) such as statements that Plaintiff "'fabricated false facts' in a grand jury proceeding" (*id.*, ¶ 402) and is a "'rogue' investigator" (*id.*, ¶ 404).  Defendants argue that the alleged publications discuss matters of public concern for which Plaintiff has no right of privacy.  Doc. 17 at 10; Doc. 18 at 9.  Arizona courts have "held that the right of

privacy does not exist 'where the plaintiff has become a public character[.]'" *Godbehere*, 783 P.2d at 789 (quoting *Reed v. Real Detective Pub. Co.*, 162 P.2d 133, 138 (Ariz. 1945)).  "In addition, privacy rights are absent or limited 'in connection with the life of a person in whom the public has a rightful interest, [or] where the information would be of public benefit.'"  *Id.* (quoting *Reed*, 162 P.2d at 138) (other citations omitted).   In *Godbehere*, the Arizona Supreme Court held that "there can be no false light invasion of privacy action for matters involving official acts or duties of public officers."  *Id.*

The statements that Plaintiff "fabricated false statements" and is a "rogue investigator" are statements relating to the manner in which Plaintiff performs her official duties and therefore not actionable.  The Court will dismiss Plaintiff's false light claim.

### E.    Count IV:  Violation of A.R.S. § 38-1101.

Section 38-1104(A) of the Arizona Revised Statutes provides that "[a] law enforcement officer shall not be subject to disciplinary action except for just cause."  The statute further provides that "[i]f a law enforcement officer is demoted or terminated by an employer or a person acting on behalf of an employer where there is no hearing officer, administrative law judge or appeals board to review the demotion or termination, the law enforcement officer may bring an action in superior court to review the agency's file.  If the court finds from a review of the file that there was no just cause for the demotion or termination, the officer is entitled to a hearing on the demotion or termination."  A.R.S. § 38-1104(E).

Count four alleges that Horne and Bistrow subjected Plaintiff to the following disciplinary actions without just cause:    (1) "[c]onducting a sham 'independent investigation,'" (2) "[f]orcing Plaintiff to investigate herself," (3) "[d]enying Plaintiff the chance to be promoted to Assistant Chief Special Agent," (4) "[d]enying Plaintiff's request to resume her position with the FBI Task Force," (5) "[d]enying Plaintiff favorable and lucrative details and assignments," (6) "[f]ailing to defend Plaintiff," (7) "[a]ttempting to force Plaintiff to resign," (8) "[e]ffectively terminating Plaintiff from the position she enjoyed and all benefits prior to about January 23, 2012."  Compl., ¶ 412.

The complaint alleges that Plaintiff has been "effectively terminated" (*id.*, ¶ 414), and is entitled to reinstatement to her position" (*id.*, ¶ 415) and "to money damages for her lost salary, overtime and benefits . . . under A.R.S. § 38-1104(F)" (*id.*, ¶ 416).

Defendants argue that the complaint fails to allege that Plaintiff was "terminated" or "demoted." Doc. 18 at 9-10. The Court agrees. The complaint alleges that Horne and Bistrow "have taken one or more actions in the nature of disciplining Plaintiff" (Compl., ¶ 412), but, despite Plaintiff's arguments to the contrary (Doc. 23 at 12), none of the alleged actions constitute a termination or demotion. The complaint does not allege that Plaintiff's salary has been reduced, that she has lost overtime wages, or any other factual allegation that renders the conclusion that Plaintiff was "[e]ffectively terminate[ed]" (compl., ¶ 412(h)) plausible. The complaint states that Plaintiff has a private right of action under § 38-1104(E) (*id.*, ¶ 413), but that provision provides for review of a file in the case of a termination or a demotion only. The complaint also states that Plaintiff has been "effectively terminated . . . under A.R.S. § 38-1101(3)" (*id.*, ¶ 414), but the Court cannot find that provision or any definition of "effectively terminated" in § 38-1101. The claim is generally brought under § 38-1101 (Doc. 1-1 at 70), but that statute does not appear to provide for a private right of action. Because the claim fails to articulate a cognizable legal theory or allege facts sufficient to show that Plaintiff was terminated or demoted, it will be dismissed.

**F.      Count V:  Unlawful Retaliation in Violation of A.R.S. § 38-532.**

Section 38-532(B) of the Arizona Revised Statutes provides that "[t]he disclosure by an employee to a public body alleging a violation of law . . . shall be in writing and shall contain the following information:  1.  The date of the disclosure.  2.  The name of the employee making the disclosure.  3.  The nature of the alleged violation of law, mismanagement, gross waste of monies or abuse of authority.  4.  If possible, the date or range of dates on which the alleged violation of law, mismanagement, gross waste of monies or abuse of authority occurred."  Plaintiff's fifth cause of action alleges that Horne and Bistrow retaliated against Plaintiff because she disclosed information about

Horne to the FBI.  Compl., ¶¶ 419-20, 427.

Defendants argue that Plaintiff has failed to allege a prima facie case of unlawful retaliation, and, specifically, that the complaint fails to allege that Plaintiff's disclosure to the FBI was in writing and contained the necessary information.  Doc. 17 at 11-12; Doc. 18 at 10-11.  Plaintiff points to paragraphs 248 and 447 of the complaint and argues that the complaint satisfies the requirements of § 38-532.  Paragraph 248 alleges that "Bistrow did not need to publish the Notice of Claim's false and defamatory words in the Bistrow memo to accomplish any legitimate [attorney general] objective."  Compl., ¶ 248.  Paragraph 447 alleges that "Defendants and their co-conspirators enjoy no immunities or privileges in connection with their abuse of process."  *Id.*, ¶ 447.  Neither paragraph comes close to alleging facts that address the requirements of § 38-532, let alone facts that meet those requirements.  The Court will dismiss the claim.

### G.    Count VI:  Abuse of Process.

"The elements of an abuse-of-process claim are '(1) a willful act in the use of judicial process; (2) for an ulterior purpose not proper in the regular conduct of the proceedings.'"  *Crackel v. Allstate Ins. Co.*, 92 P.3d 882, 887 (Ariz. Ct. App. 2004) (quoting *Nienstedt v. Wetzel*, 651 P.2d 876, 881 (Ariz. Ct. App. 1982)).  Defendants argue that there is no allegation concerning the use of judicial processes.  Doc. 17 at 12-13; Doc. 18 at 11-12.  Plaintiff cites to an Arizona tort law handbook and argues that "[t]he range of processes has been expansively interpreted to include any aspect of the judicial process[.]"  Doc. 23 at 14.  Plaintiff then proceeds to assert various non-judicial activities, such as investigations, arguing that they are judicially sanctioned and therefore can give rise to a claim for abuse of process.  *Id.* at 15.  Besides citing to the handbook (a copy of which has not been provided to the Court), Plaintiff provides no legal support for her broad interpretation of "use of judicial process."  Because Plaintiff fails to make any allegation concerning the use of judicial process, the Court will dismiss this claim.

### H.    Count VII:  Intentional Infliction of Emotional Distress.

A plaintiff alleging intentional infliction of emotional distress must demonstrate

three elements: (1) the defendant's conduct was extreme and outrageous, (2) the defendant intended to cause emotional distress or "recklessly disregarded the near certainty" that his conduct would produce such distress, and (3) the defendant's conduct actually caused severe emotional distress. *Bodett v. Coxcom, Inc.*, 366 F.3d 736, 746 (9th Cir. 2004); *Ford v. Revlon*, 734 P.2d 580, 585 (Ariz. 1987) (en banc).

Defendants argue that the complaint fails to allege facts sufficient to establish that Horne and Bistrow's conduct was extreme and outrageous.  Doc. 17 at 13-15; Doc. 18 at 12-14.  The extreme and outrageous element is met when a defendant's conduct is "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.*, 905 P.2d 559, 562 (Ariz. Ct. App. 1995) (citations omitted).  Plaintiff responds by pointing to paragraphs 153, 155-157, 341, 345-361, and 454-458 of the complaint.  Doc. 23 at 16.

Paragraphs 341, and 354-361 allege facts showing that Plaintiff has suffered severe emotional distress, the third prong of an intentional infliction of emotional distress claim.  Paragraphs 454-458 allege that the actions of Horne and Bistrow "were and are cruel, malicious, punitive and vengeful" (Compl., ¶ 454), that "[t]heir conduct is so outrageous, improper, and/or illegal and extreme that it shocks the conscious of an orderly society" (*id.*, ¶ 455), and that their conduct was intended to and did in fact cause Plaintiff to suffer extreme emotional distress (*id.*, ¶¶ 456-57).  Absent from those paragraphs, however, are factual allegations sufficient to render the alleged conclusions plausible. Paragraphs 153 and 155-157 allege that Horne and Bistrow "developed a personal animosity toward Plaintiff" (Compl., ¶ 155), and "concocted a scheme to destroy [her] good name as an investigating officer by portraying her as a 'rogue' investigator with a political agenda who set out to do political harm to Horne" (Compl., ¶ 153).  Although reasonable minds can often differ about whether alleged conduct is sufficiently outrageous, *Nelson v. Phoenix Resort Corp.*, 888 P.2d 1375, 1386 (Ariz. Ct. App. 1994), that is not true with respect to these allegations.   Undertaking an

investigation based on allegations made by others does not constitute the kind of extreme and outrageous conduct required for this tort.  *See Johnson v. McDonald*, 3 P.3d 1075, 1080-81 (Ariz. Ct. App. 1999) (not extreme and outrageous conduct to defame molestation victims and to intentionally orchestrate a character assassination).  Neither does demoting an employee based on a political or personal agenda.  *See Mintz*, 905 P.2d at 562-64 (not extreme and outrageous conduct to refuse to promote person because of sex discrimination and or retaliation for filing sex discrimination claims); *see also Nelson*, 888 P.2d at 1386-87 (terminating employee in front of news media did not constitute extreme and outrageous conduct).  Because Plaintiff has not alleged facts that rise to the level of reprehensibility required for intentional infliction of emotion distress, the Court will dismiss this claim.  *See Mintz*, 905 P.2d at 554 ("It is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tor of intentional infliction of emotional distress." (brackets and citations omitted)).

### I.      Count VIII:  Invasion of Privacy.

Plaintiff's invasion of privacy claim refers to two provisions of the Arizona Constitution (Compl., ¶¶ 466, 468), and alleges generally that Plaintiff had an absolute right to privacy in her personal affairs and political affiliation (*id.*, ¶¶ 464, 468-69).  In her response to the motions to dismiss, Plaintiff submits that her invasion of privacy claim is based on an invasion of privacy claim recognized in the Restatement (Second) of Torts that "Arizona courts have not expressly adopted[.]"  Doc. 23 at 16.  For legal support, Plaintiff cites to same Arizona tort law handbook and the "Restatement 2d of Torts § 67D."  *Id.*  As the Court noted above, Plaintiff has not provided the Court with a copy of the handbook.  Additionally, the Court cannot find § 67D in the Restatement (Second) of Torts.  Section 67 is titled "Assault or Imprisonment in Self-Defense."  Because Plaintiff has not provided any legal authority for this claim and the Court cannot discern a cognizable legal theory for it, the Court will dismiss it.

### J.      Count IX:  Civil Rights Violation, 42 U.S.C. § 1983.

The State argues that Plaintiff's § 1983 claim must be dismissed against it because it is not a "person" subject to liability under 42 U.S.C. § 1983.  Doc. 16 at 2-3.  The Court agrees.  The United States Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983."  *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989).  The Court must dismiss Plaintiff's § 1983 claims against the State.

**K.    Count X:  Negligence.**

A negligence claim requires a Plaintiff to prove "(1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages."  *Gipson v. Kasey*, 150 P.3d 228, 230 (Ariz. 2007) (en banc).  The complaint generally alleges that Horne and Bistrow engaged in various forms of misconduct, but the complaint does not adequately plead all four of the required elements.  Plaintiff has not pled the relevant standard of care, nor has she pled any facts as to how Horne or Bistrow breached that standard.  Because the complaint's conclusory allegations fail to state a plausible negligence claim, the Court will dismiss the claim.

**L.    Count XI:  Respondeat Superior.**

The complaint appears to assert a respondeat superior claim against the State only.  *See* Compl., ¶ 498.  The State moves to dismiss it.  Doc. 16.  The State does not argue in its motion why Plaintiff's respondeat superior claim should be dismissed.  Doc. 16.  In its reply brief, the State argues that because it is entitled to dismissal of all other claims, it is entitled to dismissal of the respondeat superior claim.  Doc. 31 at 2.  Because the Court has not dismissed the compliant in its entirety, the Court will deny the State's motion to dismiss the respondeat superior claim.

**IT IS ORDERED:**

1.    The State's motion to dismiss (Doc. 16) is **denied** with respect to Plaintiff's conspiracy, defamation, and respondeat superior claims as set forth above, and is otherwise **granted**.

2.     The Bistrow Defendants' motion to dismiss (Doc. 17) is **denied** with respect to Plaintiff's conspiracy and defamation claims as set forth above, and otherwise **granted**.

3.     The Horne Defendants' motion to dismiss (Doc. 18) is **denied** with respect to Plaintiff's conspiracy and defamation claims as set forth above, and otherwise **granted**.

Dated this 28th day of August, 2013.

_____
David G. Campbell
United States District Judge